IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-50

No. 280A20

Filed 23 April 2021

IN THE MATTER OF: M.J.B. III, G.M.B., and J.A.B.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 30 March 2020 by Judge Regina R. Parker in District Court, Beaufort County. This matter was calendared for argument in the Supreme Court on 19 March 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Miller & Audino, LLP, by Jay Anthony Audino, for petitioner-appellee Beaufort County Department of Social Services.*

*Tasneem A. Dharamsi for appellee Guardian ad Litem.*

*Sean P. Vitrano for respondent-appellant mother.*

BARRINGER, Justice.

¶ 1 Respondent-mother appeals from the trial court's 30 March 2020 orders terminating her parental rights in her minor children M.J.B. III (Mark),[1] G.M.B.

---

[1] Pseudonyms are used throughout this opinion to protect the identities of the juveniles.

(Gerry), and J.A.B. (James).[2] Upon careful consideration, we affirm the trial court's orders terminating respondent-mother's parental rights.

## I. Factual and Procedural Background

On 28 June 2019, the Beaufort County Department of Social Services (DSS) filed juvenile petitions alleging that ten-year-old Mark, eight-year-old Gerry, and six-year-old James were neglected juveniles. The juvenile petitions outlined DSS's years of involvement with respondent-mother and her failure to properly feed, bathe, and clothe her children or protect them from harm. Throughout the children's lives, respondent-mother had been financially and emotionally dependent on various males, placing herself at risk of abuse. In addition, respondent-mother's boyfriend, who subsequently became her husband, physically abused the children. After obtaining custody of the children, DSS placed them together in a licensed therapeutic foster home due to their special needs and the substantial trauma they had experienced.

The juvenile petitions were heard on 30 October 2019, and the children were adjudicated to be neglected juveniles. In its adjudication order, the trial court made findings of fact consistent with the allegations in the juvenile petitions (summarized

---

[2] While the trial court also terminated the parental rights of the children's father, he is not a party in this case. Thus, this decision does not address the trial court's findings and orders concerning the children's father.

above). Accordingly, the trial court set the permanent plan for the children as reunification with a concurrent plan of adoption.

¶ 4    Following a permanency-planning hearing on 8 January 2020, the trial court found that respondent-mother had not made substantial progress toward resolving the need for DSS intervention. Among other things, the trial court found that the children had revealed new information about the abuse they had suffered while under respondent-mother's care—including being hit, struck, and beaten by family members and being sexually abused by respondent-mother's boyfriends, including her now husband. Therefore, the trial court changed the children's permanent plan to adoption with a concurrent plan of reunification.

¶ 5    On 22 January 2020, DSS filed a motion to terminate the parental rights of respondent-mother on grounds of neglect and dependency. *See* N.C.G.S. § 7B-1111(a)(1), (6) (2019). The termination motion was heard on 4 March 2020. On 30 March 2020, the trial court entered an adjudication order, concluding that both grounds for termination alleged in the motion existed; and a disposition order, concluding that it was in the best interests of the children to terminate respondent-mother's parental rights. Accordingly, the trial court terminated respondent-mother's parental rights. Respondent-mother now appeals.

## II.    Analysis

¶ 6    Respondent-mother challenges the trial court's adjudication of the existence of

grounds to terminate her parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) and (6). Since "a finding of only one ground is necessary to support a termination of parental rights," we address only respondent-mother's challenge to the adjudication of neglect under N.C.G.S. § 7B-1111(a)(1). *In re A.R.A.*, 373 N.C. 190, 194 (2019). After careful review, we conclude that the unchallenged findings in this case combined with the challenged findings that are supported by clear, cogent, and convincing evidence are more than sufficient to support the trial court's determination that grounds existed to terminate respondent-mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1). Accordingly, we affirm the orders terminating respondent-mother's parental rights.

¶ 7        The Juvenile Code provides for a two-stage process for the termination of parental rights: adjudication and disposition. N.C.G.S. §§ 7B-1109 to -1110 (2019). During the adjudicatory stage, "[t]he burden in these proceedings is on the petitioner or movant to prove the facts justifying the termination by clear and convincing evidence." N.C.G.S. § 7B-1111(b); *see also id.* § 7B-1109(e)–(f). If one or more grounds exist, the trial court then proceeds to the dispositional stage where it determines whether termination of parental rights is in the children's best interests. N.C.G.S. § 7B-1110(a). On appeal, respondent-mother does not challenge the trial court's determination in the dispositional stage that termination was in the children's best interests.

## A. Standard of Review

"We review a trial court's adjudication under N.C.G.S. § 7B-1111 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.'" *In re E.H.P.*, 372 N.C. 388, 392 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379 (2019). "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal. Moreover, we review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407 (2019) (citations omitted). As for the trial court's conclusions of law, this Court reviews them de novo. *In re M.C.*, 374 N.C. 882, 886 (2020).

## B. Neglect

A trial court may terminate parental rights for neglect if it concludes the parent has neglected the juvenile such that the juvenile is a "neglected juvenile" within the meaning of N.C.G.S. § 7B-101. N.C.G.S. § 7B-1111(a)(1). A neglected juvenile is defined, in pertinent part, as one "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; or who has been abandoned; or who lives in an environment injurious to the juvenile's welfare."

N.C.G.S. § 7B-101(15) (2019). In some circumstances, the trial court may terminate a parent's rights based on neglect that is currently occurring at the time of the termination hearing. *See, e.g.*, *In re K.C.T.*, 375 N.C. 592, 599–600 (2020). However, such a showing is not required if, as in this case, the child is not in the parent's custody at the time of the termination hearing. *In re N.D.A.*, 373 N.C. 71, 80 (2019). Instead, the trial court looks to "evidence of neglect by a parent prior to losing custody of a child—including an adjudication of such neglect" as well as "any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *In re Ballard*, 311 N.C. 708, 715 (1984). "The determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding.*" *Id.* "After weighing this evidence, the trial court may find that neglect exists as a ground for termination if it concludes the evidence demonstrates 'a likelihood of future neglect by the parent.' " *In re B.T.J.*, 2021-NCSC-23, ¶ 11 (quoting *In re R.L.D.*, 375 N.C. 838, 841 (2020)).

**C. Challenges to Specific Findings of Fact**

On appeal, respondent-mother challenges several of the specific factual findings made by the trial court and then argues that the remaining findings do not support a finding that there was a likelihood of future neglect. Below, we address only those challenges that are necessary to support the trial court's adjudication that neglect existed as a ground for termination. While respondent-mother challenges

other findings of fact, those findings are unnecessary to determine that there was a likelihood of future neglect, so we do not address them.

¶ 11     Respondent-mother's first relevant challenge is to finding of fact 53: "[Respondent-mother] has participated in parenting classes, but she has been unable to make any progress. Her pre-test and post-test indicate that she did not learn anything during the entirety of the classes provided." Relying on parenting-profile evaluations completed approximately one month apart in August and September of 2019, respondent-mother contends that the trial court's finding of a lack of progress is not supported by the evidence. To the extent this contention involves the "pre-test and post-test," we agree that the evidence does not support a finding that respondent-mother "did not learn anything." Rather, the record reflects that respondent-mother's pre-test and post-test showed slight improvements in each of the five parenting constructs evaluated. Thus, we disregard that portion of the finding. *See In re J.M.*, 373 N.C. 352, 358 (2020) (disregarding a finding not supported by the evidence).

¶ 12     However, the record contains sufficient evidence to support the finding that respondent-mother has been "unable to make any progress" in her parenting skills. Regarding the tests, respondent-mother only improved her scores by one to two points, leaving her in the medium risk range for all five categories. According to the social worker, this did not indicate demonstrable change. More concerningly, the social worker testified that respondent-mother did not use any of the parenting skills

taught in the class when she visited with her children. Respondent-mother does not challenge the trial court's finding that each visit "was a retraumatizing episode [for the children] evidenced by anxiety, visible tremors, nightmares, insomnia, recurrence of selective mutism, refusing to eat [and] loss of appetite, encopresis, enuresis, aggressive behaviors towards siblings, and self-injurious behaviors." Further, respondent-mother stated that she could not remember what she learned in her parenting class other than to not raise her voice, talk calmly, and let the children help out with meals. We conclude this evidence supports the trial court's finding that respondent-mother was unable to make any progress in her parenting skills.

¶ 13        Respondent-mother's second relevant challenge is to the following emphasized portion of finding of fact 82: "Due to [respondent-mother's] . . . parental deficiencies, the juveniles have been exposed to many incidents of traumatic physical, sexual[,] and emotional abuse. *The juveniles' trauma is such that they will never likely be able to properly function if returned to* [*respondent-mother's*] . . . *care.*" (Emphasis added.) Respondent-mother contends that the therapist never made this determination and that the record otherwise lacks evidence that would support it.

¶ 14        However, the unchallenged findings of fact show that the children incurred significant trauma from the physical and sexual abuse they experienced under respondent-mother's care, as well as from her inability to provide for their physical needs like health, nutrition, and hygiene. As a result, the children exhibited

substantial trauma-related behaviors. For the children to overcome their trauma and properly function, the trial court found that they would need many years of therapeutic care. Additionally, the therapist testified that they needed time in a safe environment. The unchallenged findings of fact reveal that respondent-mother failed to provide either a safe environment or even a minimally competent level of care prior to the children entering DSS custody. At the time of the termination hearing, respondent-mother still had not provided a safe environment but instead chose to maintain a romantic relationship with one of her children's abusers and live with another one of them. In addition, even if respondent-mother had progressed in her parenting skills—which she had not—she also did not believe her children had been abused, completely undermining her ability to help the children heal from that abuse. And that does not even include the therapist's testimony concerning the traumatic reactions the kids displayed after attending visitations with respondent-mother. Thus, finding of fact 82, that the children would "never likely be able to properly function" if returned to respondent-mother's care, was supported by clear, cogent, and convincing evidence.

¶ 15 Further, respondent-mother argues that finding of fact 82 is related to the trial court's best interests determination, not its adjudication of neglect. But the fact that the children would never be able to properly function if returned to respondent-mother's care establishes that returning the children to her care would place them

into an environment injurious to their welfare—one of the definitions of neglect. *See* N.C.G.S. § 7B-101(15). Accordingly, the trial court did not err in making this finding during the adjudicatory stage.

**D. Argument Concerning Likelihood of Future Neglect**

¶ 16        Respondent-mother further argues that the evidence presented at the termination hearing does not support the trial court's finding that a likelihood of future neglect existed should the children return to respondent-mother's care. However, as discussed above, the relevant findings that respondent-mother challenged were supported by competent evidence, and so we treat them as conclusive on appeal. In addition, the record contained numerous other unchallenged findings that when combined with the facts discussed above are more than sufficient to demonstrate a likelihood of future neglect.

¶ 17        Starting first with evidence of past neglect, we note that respondent-mother does not challenge any of the trial court's findings concerning her history with the children before DSS obtained custody. Accordingly, we accept as binding the trial court's findings that respondent-mother repeatedly failed to provide for her children's basic needs, including food, shelter, clothing, and hygiene. In addition, respondent-mother failed to protect the children from physical or sexual abuse, even when she knew it was occurring. This evidence is more than sufficient to support a finding of past neglect.

Likewise, while respondent-mother contends that she had changed her circumstances since the children entered DSS custody, the evidence presented at the termination hearing supports the trial court's finding that respondent-mother would likely neglect the children in the future if they returned to her care. As discussed above, this evidence included the fact that respondent-mother had not made any progress in her parenting skills, did not believe that her children had been abused, and continued to associate with their abusers. Accordingly, if returned to her care, the children would remain at risk of physical and sexual abuse, have unmet physical needs, and never heal from the trauma they had already endured. These facts are more than sufficient to establish a likelihood of future neglect.

### III. Conclusion

The trial court did not err by adjudicating that grounds existed to terminate respondent-mother's parental rights for neglect pursuant to N.C.G.S. § 7B-1111(a)(1). Since the trial court needed to find only one of the grounds in N.C.G.S. § 7B-1111(a) to terminate respondent-mother's parental rights, we need not address its adjudication of dependency as a ground for termination. *See In re A.R.A.*, 373 N.C. at 194. Having determined that grounds existed for termination and because respondent-mother does not challenge the trial court's determination of the children's best interests at the dispositional stage, we affirm the trial court's orders terminating respondent-mother's parental rights to Mark, Gerry, and James.

AFFIRMED.